# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FLORA KHAN,

          Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

          Defendant.

No. 15 C 9814

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Flora Khan filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits under Title II of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et. seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Disability Insurance Benefits (DIB), a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001).[1] A person is disabled if he or she is unable to perform

---

[1] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The standard for determining DIB is virtually identical to that

"any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

used for Supplemental Security Income (SSI). *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

## II. PROCEDURAL HISTORY

Plaintiff applied for benefits on October 5, 2011, alleging that she has been disabled since October 10, 2011, due to post-traumatic stress disorder and depression. (R. at 20, 235, 238, 270). The application was denied initially and upon reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 20, 113, 171, 178). On February 3, 2014, Plaintiff testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 20, 36, 39–61). Edward F. Pagella, a vocational expert (VE), also testified. (*Id.* at 20, 61–65).

The ALJ denied Plaintiff's request for benefits on April 23, 2014. (R. at 20–30). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since October 3, 2011, her alleged onset date. (*Id.* at 22). At step two, the ALJ found that Plaintiff had the following severe impairments: status post staphylococcal infection, post-traumatic stress disorder (PTSD), and depression. (*Id.*). At step three, the ALJ found that Plaintiff's impairments, alone or in combination, did not meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.* at 23–24).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[2] and determined that she could perform medium work, except that

> she is able to reach with her upper left extremity frequently; however, she is never able to reach overhead with the left upper extremity. She can never climb ladders/ropes/scaffolds. [Plaintiff] must avoid concen-

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

trated exposure to hazards. She is able to understand, remember, and carry out simple instructions and perform simple tasks. [Plaintiff] is able to interact with the public, coworkers, and supervisors occasionally.

(R. at 24–25). Based on Plaintiff's RFC and the testimony of the VE, the ALJ determined at step four that Plaintiff could not perform any past relevant work. (*Id.* at 28). At step five, based on Plaintiff's RFC, her vocational factors, and the VE's testimony, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy, including the jobs of assembler, hand packer, and laundry worker. (*Id.* at 28–29). Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined by the SSA, from the alleged onset date through her date last insured. (*Id.* at 29).

The Appeals Council denied Plaintiff's request for review on September 3, 2015. (R. at 1–5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561–62 (7th Cir. 2009.)

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's

task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

# IV. RELEVANT MEDICAL EVIDENCE

Plaintiff, who was 46 years old at the time of her hearing, suffers ongoing psychological and physical effects from a necrotizing bacterial infection that resulted in an October 2011 hospitalization. The infection necessitated several disfiguring surgeries and caused permanent damage to her left arm, neck, and upper chest. (R. at 372, 470–73). Because the issues addressed in this Opinion focus solely on Plaintiff's psychological impairments, detailed discussion of Plaintiff's physical ailments is omitted.

In an initial evaluation on March 27, 2012, psychiatrist Mohammad Butt, M.D., noted that Plaintiff presented with a depressed and tearful affect. (R. at 583). She related feelings of depression, aches and pains all over her body, a lack of interest in life, difficulties doing household chores or caring for her children, low self-esteem, poor concentration, and memory lapses. (*Id.* at 578). She was also experiencing flashbacks. (*Id.* at 584). Dr. Butt assessed her then-current GAF as 30.[3] (*Id.*). Diagnosing major depression, generalized anxiety disorder, and PTSD, Dr. Butt prescribed the antidepressant Lexapro and two anti-anxiety medications. (*Id.* at 584–85). Treatment notes written over the course of the following year show that in

---

[3] The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. Text Rev. 2000) (hereinafter DSM-IV). A GAF score of 30 can indicate an "inability to function in almost all areas (e.g. stays in bed all day, no job, home or friends)." *Id.* The Court notes that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity...and questionable psychometrics in routine practice." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013); see *Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (recognizing that the American Psychiatric Association abandoned the GAF scale after 2012).

April 2012, Plaintiff switched to the antidepressant Cymbalta because she was unable to purchase Lexapro. (*Id.* at 613). Dr. Butt continued to assess Plaintiff monthly, increased her dosage of Cymbalta in June 2012, and considered another increase in March 2013. (*Id.* at 613–16). As of March 2013, Plaintiff continued to experience flashbacks to her surgical procedures and was still having difficulties finishing household chores. (*Id.* at 616).

In a Psychiatric/Psychological Impairment Questionnaire dated March 12, 2013, Dr. Butt reported that he had been treating Plaintiff monthly for one year for severe depression and PTSD. (R. at 603). He listed numerous clinical findings to support his diagnoses, including poor memory, emotional lability, recurrent panic attacks, difficulty thinking or concentrating, intrusive recollections of a past experience, persistent irrational fears, social withdrawal or isolation, and several other findings. (*Id.* at 604). According to the psychiatrist's report, Plaintiff's primary symptoms were fatigue, anhedonia, low energy, sleep disturbance, and poor appetite. (*Id.* at 605). She most frequently experienced fatigue, low energy, loss of interest in surroundings, inability to finish tasks, disturbed sleep, and poor appetite. (*Id.* at 605).

Dr. Butt opined that Claimant was "markedly limited," defined as having a limitation that "effectively precludes the individual from performing the activity in a meaningful manner," in 15 out of 20 work-related mental abilities and "moderately limited" in the rest. (R. at 605–08). Among her marked limitations were the ability to remember locations and work-like procedures; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination with or proximity to others without being distracted by them; and the ability to accept instructions and respond appropriately to criticism from supervisors. Dr. Butt opined that Plaintiff had a GAF that was then 40 and had been as low as 30 in the prior year,[4] that her prognosis was poor, and that she would be unable to tolerate even "low stress" work. (*Id.* at 603, 609). He concluded that she was not a malingerer. (*Id.* at 609).

David Gilliland, Psy.D., reviewed Plaintiff's file and issued a Mental Residual Functional Capacity assessment on May 14, 2013. Dr. Gilliland opined that the totality of the evidence did not support Dr. Butt's opinion. (R. at 109). However, based on his own review of the evidence, Dr. Gilliland found that Plaintiff had marked limitations in concentration and persistence, including marked limitations in the ability to carry out even very short and simple instructions; the ability to maintain attention and concentration for extended periods; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at 107–08). In most capacities related to social interaction and work-related adaptation, Dr. Gilliland found Plaintiff "moderately" limited. (*Id.* at 108).

---

[4] A GAF score of 31–40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed and avoids friends, neglects family, and is unable to work). DSM-IV at 34.

Psychologist Michael J. Ingersoll, Ph.D., performed a Psychological Evaluation on December 7, 2013. (R. at 624–28). The only record that he acknowledged reviewing was Dr. Butt's initial evaluation on March 27, 2012. (*Id.* at 624; *see id.* at 578–84). Dr. Ingersoll noted that Plaintiff was able to relate in an appropriate manner, respond to all questions, and perform simple calculations. (*Id.* at 625–28). Her affect was constricted and her mood appeared depressed. (*Id.* at 625–26). Plaintiff reported that she was benefitting from Lexapro and Cymbalta, but still described being "sad all the time" and experiencing sleep disturbances. (*Id.* at 624). Dr. Ingersoll diagnosed major depressive disorder, recurrent, without psychosis, in partial remission. (*Id.* at 627). He provided no functional assessment.

At her hearing on February 3, 2014, Plaintiff testified that her husband prepares meals, does the chores, and cares for their children because she has no energy. (R. at 40, 44–46, 49–50, 55–56.) She forgets to complete tasks. (*Id.* at 50.) She also experiences anxiety, which she tries to control with deep breathing. (*Id.* at 53). Nevertheless, she often gets upset or angry, crying daily and screaming five or six times a week. (*Id.* at 54). She also often fights with and shouts at her husband. (*Id.* at 46). At a prior job, she sometimes went into the back room and shouted to relieve stress. (*Id.* at 55.) She has feelings of worthlessness and feels anxiety around other people. (*Id.* at 47). She walks her kids to school each day but leaves them at the playground gate about a half a block from the usual drop-off point because crowds trigger anxiety symptoms including rapid heartbeat and problems catching her breath. (*Id.* at 41–42, 47). She has difficulty concentrating, cannot pay attention to a television

show or a conversation for more than a few minutes, and often finds her thoughts returning to her hospitalization, her surgery, her scars, and her pain. (*Id*. at 44, 49–52).

The VE testified that Plaintiff's prior work as a retail clerk had been performed at a medium level. (R. at 61–62.) The ALJ then asked the VE to consider an individual of Plaintiff's age, education, and work experience who could: perform medium work; reach frequently in all directions, including overhead; understand, remember, and carry out simple instructions and perform simple tasks; and have occasional interaction with the public, coworkers, and supervisors. (*Id*. at 62.) The VE testified that such person would not be capable of Plaintiff's past work, but that the jobs of laundry worker, hand packer, and assembler would be available. (*Id*. at 62–63.) Upon further questioning, the VE affirmed that the same jobs would be available even if the hypothetical person could never reach overhead with the left arm, could never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to hazards. (*Id*. at 63–64.) However, if that person were off task even 15% of the workday, no substantial gainful activity would be available. (*Id*. at 64–65.) Additionally, all jobs would require the person to interact with supervisors and coworkers on at least an occasional basis. (*Id*. at 65.)

## V. DISCUSSION

In support of her request for reversal, Plaintiff argues that: (1) the ALJ did not properly weigh the medical opinion evidence and therefore failed to properly assess her RFC; (2) the ALJ performed a flawed assessment of her credibility; and (3) the

ALJ wrongly failed to include all of her identified restrictions into the hypothetical questions he posed to the vocational expert.

## A. ALJ Did Not Properly Evaluate the Treating Psychiatrist's Opinion

In Social Security disability claims, the opinion of a treating physician, including a treating psychiatrist, is afforded controlling weight if it is both "well-supported" by clinical and diagnostic evidence and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011); *see Loveless v. Colvin,* 810 F.3d 502, 507 (7th Cir. 2016). Because a treating doctor has "greater familiarity with the claimant's condition and circumstances," *Gudgel v. Barnhart,* 345 F.3d 467, 470 (7th Cir. 2003), an ALJ must "offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (citations omitted); *see also Stage v. Colvin*, 812 F.3d 1121, 1126 (7th Cir. 2016). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Gudgel,* 345 F.3d at 470. Furthermore, even where an ALJ articulates good reasons for withholding controlling weight from a treating physician's opinion, he is still required to determine what weight, if any, to give it. Where the opinions of treating and nontreating physicians contradict one another, the ALJ must decide which doctor to believe, considering such factors as "the length, nature, extent of the treatment relationship; frequency of examination; [each] physician's specialty, the type of tests performed, and the consistency and supportability of [each] opinion." *Scott,* 647 F.3d at 740; *Books v. Chater,* 91 F.3d 972, 979 (1996). The

ALJ must then provide a "sound explanation" for that decision. *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011).

Plaintiff met with her psychiatrist monthly starting in March 2012. Notes from these meetings repeatedly indicate that Plaintiff was sad, tearful, depressed, and "very upset," with a labile affect. (R. at 613–16). Dr. Butt wrote that Plaintiff reported hopelessness, disturbed sleep, low self-esteem, and a lack of motivation. (*Id.* at 613, 614). At one meeting, Plaintiff was accompanied her husband, who "appeared to be very worried," and the two expressed concern about Plaintiff's ability to care for their children. (*Id.* at 614). Notes indicate that in July 2012 Plaintiff was "encouraged to continue counseling" and that the following month Plaintiff and her husband were together "advised to consider family counseling." (*Id.* at 614). In November 2012, Plaintiff was "encouraged to continue individual and family counseling," and in January 2013, she was "encouraged to continue family counselling" and "express her feelings." (*Id.* at 615–16). In the detailed questionnaire he completed in March 2013, Dr. Butt indicated that Claimant was effectively precluded from engaging in most of the mental activities requisite for employment and opined that she was incapable of even low-stress work. (*Id.* at 605–09).

The ALJ referenced Dr. Butt's treatment notes only once in his opinion, stating that that Plaintiff "reported difficulty with self-esteem and anxiety," and that Dr. Butt had increased Plaintiff's dose of Cymbalta and had recommended counseling. (R. at 26–28). The ALJ did not mention the depression, tearfulness, inability to complete household chores, and other symptoms reported in Dr. Butt's notes. The

ALJ gave "little weight" to Dr. Butt's opinion, finding that it was "not consistent with the findings of Dr. Ingersoll." (*Id.* at 28). The ALJ, however, failed to identify any specific conflict between the opinions of Drs. Butt and Ingersoll. *Moon*, 763 F.3d at 721 (The ALJ "must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination."); *Campbell*, 627 F.3d at 306 (an ALJ must "offer good reasons for discounting a treating physician's opinion"). Further, some of Dr. Ingersoll's findings are clearly not related to Dr. Butt's opinion. For example, the ALJ cited Dr. Ingersoll's finding that Plaintiff's "thought processes were clear . . . without evidence of perceptual disturbance" and that she "did not appear to have any cognitive limitations or deficits." (R. at 27). These findings do not conflict with the opinion or treatment notes of Dr. Butt, who attributed Plaintiff's limitations to the affective disorders of depression and PTSD, not to psychosis or cognitive deficits. In some other findings, such as Plaintiff's depressed mood and reports of being "sad all the time," the two doctors' reports appear consistent. (*Id.* at 613–16, 624). The ALJ did note that Plaintiff's focus was intact and that she was "not in acute emotional distress" during Dr. Ingersoll's examination. (*Id.* at 27.) Nevertheless, the fact that Plaintiff was able to maintain some level of composure during a 35-minute encounter with an unfamiliar examiner, who apparently reviewed only a single medical record (*id.* at 624), does not itself belie her treating psychiatrist's observations, including repeated episodes of tearfulness, in the course of a year of treatment. *Punzio*, 630 F.3d at 710 (the ALJ cannot determine a claimant's mental limitations based on a snapshot of a single moment).

The ALJ's second stated reason for rejecting Dr. Butt's opinion was that he found it "inconsistent with generally maintaining [Plaintiff] on Cymbalta and not changing her treatment." (R. at 28). But, Dr. Butt initially prescribed Lexapro before switching Plaintiff to Cymbalta, which he increased the dosage of in June 2012, and considered another increase in March 2013. (*Id.* at 584–85, 613–16). And, in any event, the Seventh Circuit has repeatedly held that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). This includes drawing their own inferences about the severity of a claimant's symptoms based on a doctor's failure to prescribe a particular course of treatment, when those inferences are not supported by the rest of the medical record. *Myles v. Astrue,* 532 F.3d 672, 677 (7th Cir. 2009) (criticizing an ALJ for "drawing his own, unsupported medical inference as to [the claimant's] treatment.") The ALJ's medical conclusions constitute impermissible inferences and do not form a reasonable basis for rejecting the medical opinions offered by Dr. Butt.

Moreover, even if the ALJ had provided good reasons for not providing controlling weight to Dr. Butt's opinion, he is required to weigh that opinion and other opinions in accordance with the regulatory factors listed in 20 C.F.R. § 404.1527(c)(2). The ALJ referred to a portion of the treatment notes of record, but gave no indication that he considered the length and nature of the treatment relationship, the frequency of treatment or Dr. Butt's specialty as a psychiatrist when electing to weigh Dr. Butt's opinion less heavily than that of one-time examining

psychiatrist Dr. Ingersoll. On remand, the ALJ shall re-evaluate the opinion evidence, including that provided by Dr. Butt, in accordance with the regulatory factors.

## B. The ALJ's Credibility Determination Is Patently Wrong

The Social Security Administration determined recently that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." SSR 16-3p, at *2. "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.

In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, like former 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted).

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in

the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id.*

Plaintiff testified that she is disabled due to a combination of symptoms from both her physical and mental impairments. (R. at 40–56). She does not socialize well with others and has difficulty with concentration and focus. (*Id.* at 44, 49–52).

In his decision, the ALJ found that Plaintiff's allegations "are not entirely credible." (R. at 25). Specifically, the ALJ found that

> the objective evidence regarding [Plaintiff's] severe mental impairments does not match the level of severity alleged by [her]. Dr. Butt treated [Plaintiff] with Cymbalta and he maintained her at a steady dose over time. Dr. Ingersoll's findings are generally unremarkable and he indicated that [Plaintiff] did not have any cognitive limitations due to mental impairments.

(*Id.* at 27) (citations omitted). However, as discussed above, neither of these reasons are legally sufficient or supported by substantial evidence. Dr. Butt initially prescribed Lexapro before switching Plaintiff to Cymbalta, which he increased the dosage of in June 2012, and considered another increase in March 2013. (*Id.* at 584–85, 613–16). And, in any event, the ALJ does not identify any medical evidence supporting his conclusion that a steady dose of Cymbalta means that Plaintiff's depression and PTSD were under control. *Rohan*, 98 F.3d at 970 ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). Further, the ALJ cannot discount a claimant's mental symptoms based on a single snapshot by a consultative examiner. *Punzio*, 630 F.3d at 710.

The Court finds the ALJ's credibility determination "patently wrong." *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). On remand, the ALJ shall reevaluate Plaintiff's complaints with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

## C. The RFC Assessment and Corresponding Vocational Expert Hypothetical Did Not Appropriately Address Plaintiff's Impairments in Concentration, Persistence, or Pace

The ALJ concluded at step two of his analysis that Plaintiff had moderate difficulties maintaining concentration, persistence, or pace, specifically "difficulty with concentration and focus." (R. at 23). But the ALJ did not address these difficulties in the hypothetical questions she posed to the VE. (*Id.* at 62).

In the Seventh Circuit, "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Indoranto,* 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."); *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 619 (7th Cir. 2010); *see also* Social Security Ruling (SSR) 96-5p, at *5 (RFC assessment "is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence");[5] 20 C.F.R. § 404.1545. "Among the mental limitations that the VE must

---

[5] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration."

consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin,* 794 F.3d 809, 813 (7th Cir. 2015); *see Stewart v. Astrue,* 561 F.3d 679, 684 (7th Cir. 2009) (hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'").

Further, while there is no specific language prescribed for addressing limitations in concentration, persistence, and pace, a limitation in the complexity of workplace tasks is generally insufficient. *Yurt,* 758 F.3d at 858–59 (This court has "repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."); *O'Connor-Spinner,* 627 F.3d at 620 (limitation to "routine, repetitive tasks with simple instructions" was insufficient).[6] The Commissioner attempts to distinguish the hypothetical employed by the ALJ here because it included the verbs "understand," "remember," and "carry out" with respect to simple instructions, and "perform" with respect to simple tasks. This is a distinction without a difference. Concentration, persistence, and pace limitations compromise an individual's "ability to stick with a given task over a sustained period," not with the ability to learn, understand or ini-

---

*Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably bound by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

[6] After the Seventh Circuit remanded the *O'Connor-Spinner* decision, the Social Security Administration assigned the case to a new ALJ. This ALJ, instead of following the court's instructions to account for Ms. O'Connor-Spinner's psychological limitations in his hypothetical, found at step two that Ms. O'Connor-Spinner did not have a severe impairment of depression, despite ample evidence to the contrary. The Seventh Circuit recently remanded that decision as well. *O'Connor-Spinner v. Colvin,* 832 F.3d 690 (7th Cir. 2016.

tially perform the task. *O'Connor-Spinner,* 627 F.3d at 620. That Plaintiff may be able to comprehend instructions enough to remember and perform a simple task does not imply that she can continue performing that task repeatedly at a sustained pace for the duration of a work shift in the competitive labor market. The ALJ's hypothetical to the VE therefore failed to account for all of Plaintiff's limitations.

Because the ALJ did not account for all of Plaintiff's limitations in his questioning of the VE, it is unclear whether Plaintiff is indeed capable of performing the jobs that the VE proposed. Therefore, the ALJ failed to "build an accurate and logical bridge from the evidence to her conclusion" that Plaintiff can work. *Steele,* 290 F.3d at 941 (internal quotation omitted). This prevents the court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott,* 297 F.3d at 595. For the reasons set forth above, the ALJ's decision is not supported by substantial evidence. On remand, the ALJ shall pose a hypothetical question that explicitly "account[s] for documented limitations of 'concentration, persistence, or pace.'" *Stewart,* 561 F.3d at 684.

## D. Remedy

Plaintiff requests a reversal of the Commissioner's decision with an order to award benefits. When reviewing a denial of disability benefits, a court may "affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue,* 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). The court may reverse with an instruction to award benefits only if "all factual issues have been resolved and the record

can yield but one supportable conclusion." *Briscoe*, 425 F.3d at 355 (citation omitted). That is not the case here. The ALJ failed to appropriately weigh medical opinion evidence, properly evaluate Plaintiff's credibility, and failed to elicit VE testimony adequate to provide substantial evidence for his conclusions. It is not the purview of this Court to gather or reweigh evidence. Therefore, remand for further proceedings is the appropriate remedy.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [11] is granted in part and denied in part and Defendant's Motion for Summary Judgment [15] is denied. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: December 20, 2016

_____
MARY M. ROWLAND
United States Magistrate Judge